UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EZRA ILANI and CATHY ILANI, individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>SIMON S. ABRAHAM, an individual; KDA HOLDINGS, LLC, a domestic limited-liability company; KING SOLOMONS TREASURES, LLC, a domestic limited-liability company; 777 HOLDINGS INTERNATIONAL LTD., LLC, a domestic limited-liability company; AMASIAN GEM CORPORATION OF NEVADA, a domestic corporation; LE SIMONE JEWELRY LTD., a domestic corporation; KING DAVIDS RIVER OF GOLD LLC, a domestic limited-liability company; JEWELRY JUDGE OF LAS VEGAS, LLC, a domestic limited-liability company; LAS VEGAS JEWELRY BROKERS, LLC, a domestic limited-liability company; JOEL LACKEY, an individual; DOE Defendants I through X, inclusive; and ROE CORPORATIONS A through Z, inclusive,<br><br>Defendants. | Case No. 2:17-cv-00692-APG-PAL<br><br>**ORDER GRANTING IN PART PLAINTIFFS' APPLICATION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>(ECF No. 27) |

    Plaintiffs EZRA ILANI and CATHY ILANI (jointly "Plaintiffs") filed an Application for Default Judgment against defendants SIMON S. ABRAHAM; KDA HOLDINGS, LLC; KING SOLOMONS TREASURES, LLC; 777 HOLDINGS INTERNATIONAL LTD., LLC; AMASIAN GEM CORPORATION OF NEVADA; LE SIMONE JEWELRY LTD.; and KING DAVIDS RIVER OF GOLD LLC (collectively "Defendants"). ECF No. 27. Defaults were previously entered against those Defendants. The plaintiffs have demonstrated that those Defendants are not in the military service of the United States and are not infants or incompetent persons.

    I have considered the evidence and argument in Plaintiffs' Application for Default Judgment, and good cause appears to grant the Application in part. Plaintiffs have not offered

sufficient evidence to support entry of judgment on all of their claims against all of those Defendants. But I will grant the Application with regard to some of the claims against some of the Defendants.

I. **FINDINGS OF FACT**

1. Defendant Simon Abraham is a managing member of defendant KDA. ECF No. 1 at ¶ 17. Abraham and KDA are merchants in the jewelry industry. *Id.* at ¶ 23.

2. Plaintiffs and KDA entered into a contract for a collateralized loan on May 13, 2016 (the "Agreement"). ECF No. 27-2.

3. Under the terms of the Agreement, Plaintiffs provided a loan in the amount of $2,000,000 (the "Loan") payable upon execution of the Agreement.

4. Under the terms of the Agreement and as consideration for making the Loan, KDA was to pay fees in the amount of $500,000 (the "Loan Fees") payable upon maturity.

5. KDA was required to repay the Loan on or before 60 days from the receipt of the Loan proceeds in addition to paying the Loan Fees.

6. As security for the Loan, KDA pledged a set of seven red corundum gemstones which were appraised at $3,610,800 by co-Defendant Joel Lackey (the "Collateral").

7. Adrian Cazares ("Cazares") was named the third-party liaison in the Agreement. ECF No. 27-2. His responsibilities were to ensure the Collateral remained in the proper chain of custody for the duration of the Agreement.

8. After the Collateral was appraised by Lackey, it was deposited in a safe deposit box at Bank of Nevada.

9. Under the terms of the Agreement, the ownership rights to the Collateral were to transfer from KDA to the Plaintiffs in the event of a default. If KDA defaulted on its obligation, then Cazares was required to tender the safe deposit box keys and safe deposit box receipt within 10 days of receipt of a Notice of Intent to Take Possession.

10. Plaintiffs performed under the Agreement by wiring $2,000,000 to Abraham's account on May 18, 2016.

11. KDA defaulted on its obligation on June 17, 2016. The default transferred ownership of the Collateral to Plaintiffs.

12. Plaintiffs provided KDA and Abraham with the requisite 10 days' Notice of Intent to Take Possession of the Collateral on November 18, 2016.

13. Plaintiffs took possession of the Collateral on January 9, 2017.

14. On or about January 16, 2017, an independent gemologist (Steve Rubinstein of New York Jewelers in Chicago, Illinois) verified authenticity of the Collateral and advised Plaintiffs to obtain an official appraisal.

15. Thomas Tashey, Jr. of Professional Gem Sciences Laboratory appraised the Collateral. He estimated the value of the Collateral as between twenty-five and thirty-five dollars per carat ($25-$35/carat), resulting in a total value, at retail, of approximately $15,000.

16. KDA and Abraham knew or should have known the true value of the Collateral pledged under the Agreement. Defendants' material misrepresentation is evidence of fraudulent conduct.

17. Defendants have failed to respond to Plaintiffs' Complaint. A default was entered against the Defendants listed herein on April 19, 2017.

## II. CONCLUSIONS OF LAW

Plaintiffs have asserted claims for relief against these Defendants for (1) Breach of Contract, (2) Breach of Fiduciary Duty, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing, (4) Tortious Breach of Contract, (5) Civil Conspiracy, (6) Constructive Fraud, (7) Fraud in the Inducement, (8) Fraudulent Misrepresentation, (9) Intentional Infliction of Emotional Distress, (10) Deceptive Trade Practices in violation of NRS § 598 *et. al*, (11) unjust enrichment, (12) alter ego, and (13) accounting.

As explained below, Plaintiffs are entitled to default judgment on some of these claims. Plaintiffs do not seek default judgment on their claim for civil conspiracy at this time. And they have not offered sufficient proof to justify entry of judgment on several other claims.

////

A.  *Eitel* **Factors**

After default is entered, courts look to seven discretionary factors when deciding whether to enter default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). These factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.*

The first factor of the *Eitel* test favors Plaintiffs because they have not been repaid their $2,000,000 loan and have not received the $500,000 Loan Fees promised them. Delay only furthers those harms.

The second *Eitel* factor favors Plaintiffs because they have some meritorious substantive claims against some of the Defendants.

The third factor of the *Eitel* test is satisfied because the Plaintiffs' Complaint is sufficiently detailed and properly pleaded.

With regard to the fourth *Eitel* factor, the amount of money at stake is high: $2,500,000 for compensatory damages. This somewhat militates against entry of default judgment.

The fifth factor of the *Eitel* test favors Plaintiffs because Plaintiffs proffered significant evidence showing the existence of a valid contract, breach of that contract, and misrepresentations made in connection with that contract. Additional facts support granting default as to some of the supplementary claims.

The sixth *Eitel* factor favors Plaintiffs because Defendants failed to defend Plaintiffs' Complaint without an excusable reason.

The seventh *Eitel* factor rarely favors entry of default judgment because public policy favors decisions based on the merits of the claims. However, here it is clear from the evidence that a decision on the merits would likely result in a judgment against some of the defendants.

Based on the *Eitel* factors, Plaintiffs are entitled to entry of default judgment on some of their claims, as discussed below.

**B.     Breach of Contract**

A breach of contract claim contains the following elements: (1) a valid and existing contract; (2) a breach by the defendant which was not excused from performance; and (3) damages arising from the breach. *See Calloway v. City of Reno*, 116 Nev. 250, 256, 993 P.2d 1259, 1265 (2000) (citation omitted).

Plaintiffs and KDA entered into a valid contract, Plaintiffs performed under the contract, KDA defaulted on the Loan and failed to pay the Loan Fees, and Plaintiffs were damaged in the amount of $2,500,000 as a result of KDA's breach. Plaintiffs are entitled to judgment on this claim against KDA. But because neither Abraham nor any of the other Defendants was a party to that contract, the Plaintiffs are not entitled to judgment on this claim against them.

**C.     Breach of Fiduciary Duty**

A breach of fiduciary duty claim has three elements: (1) existence of a fiduciary duty; (2) breach of that duty; and (3) the breach proximately caused the damages. *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009); *Stalk v. Mushkin*, 12 Nev. 21, 199 P.3d 838 (2009).

A fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another. *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 979 P.2d 1286 (1999). A fiduciary relationship is deemed to exist when one party is bound to act for the benefit of the other party. *Hoopes v. Hammargren*, 725 P.2d 238 (Nev. 1986). Such a relationship imposes a duty of utmost good faith. *Id.*

Plaintiffs' Application contends that all of the Defendants owed a fiduciary duty due to their experience and expertise in the jewelry and gemology business. ECF No. 27 at 8. But Plaintiffs have not offered sufficient evidence to support a fiduciary duty. The fact that one party has more experience or expertise than another does not create a fiduciary relationship. Otherwise, nearly every commercial or consumer transaction would create fiduciary duties. Nevada law

requires more. Thus, at this time Plaintiffs are not entitled to judgment on this claim. Plaintiffs may proffer additional evidence to support this claim if they wish to pursue it.

    D.    **Breach of the Implied Covenant of Good Faith and Fair Dealing and Tortious Breach of Contract**

Every contract imposes upon the contracting parties a duty of good faith and fair dealing. NRS § 104.1304. A breach of that duty may give rise to both tort and contractual remedies. *See Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 969 P.2d 949 (1998); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 82 P.2d 1207 (1993).

A contractual breach of the implied covenant of good faith and fair dealing requires showing: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith to the plaintiff; (3) the defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were thus denied. *Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335 (1995). A tortious breach of contract contains the same elements as a contractual breach, with the addition of a "special element of reliance or fiduciary duty exist[ing] between Plaintiffs and Defendants where Defendants were in a superior or entrusted position." *Great Amer. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 934 P.2d 27 (1997).

Plaintiffs contend that all of the Defendants were parties to the subject contract, and all of the Defendants were in a superior and entrusted position due to their intimate knowledge of jewelry and gemology. ECF No. 27 at 9. But Plaintiffs have not offered sufficient evidence to support those allegations. First, only KDA was a party to the contract; none of the other Defendants was. Moreover, the fact that one party has more knowledge than another does not necessarily create an entrusted relationship. Plaintiffs have not proven the special element of reliance required for a tortious breach of the covenant of good faith and fair dealing.

Plaintiffs allege that KDA breached the duty of good faith and fair dealing by knowingly or recklessly pledging Collateral that did not have the assumed value stated at the time of contract. This allegation supports Plaintiffs' fraud and breach of contract claims, but Plaintiffs

have not demonstrated how this constitutes a breach of the implied covenant of good faith. Plaintiffs are not entitled to judgment on this claim. Plaintiffs may proffer additional evidence to support this claim if they wish to pursue it.

### E. Constructive Fraud

Constructive fraud is the breach of a legal or equitable duty arising from a fiduciary or confidential relationship. *Executive Mgmt., Ltd., v. Ticor Title Ins. Co.*, 114 Nev. 823, 963 P.2d 465 (1998). A confidential or fiduciary relationship exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interest of the one reposing confidence. *Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 529-30 (Nev. 1982).

Again, Plaintiffs have not offered sufficient proof that a fiduciary duty existed between Plaintiffs and any of the Defendants. Plaintiffs are not entitled to judgment on this claim, but they may proffer additional evidence to support this claim if they wish to pursue it.

### F. Fraud in the Inducement and Fraudulent Misrepresentation

Plaintiffs' claims of fraud in the inducement and fraudulent misrepresentation are substantially similar. Both require the same five elements: (1) the defendant made a false representation; (2) the defendant knew or believed that his representation was false, or the defendant had an insufficient basis of information for making the representation; (3) the defendant intended to induce the plaintiff to act or refrain from acting upon the misrepresentation; (4) the plaintiff justifiably relied on the defendant's misrepresentation; and (5) the plaintiff sustained damages. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382 (1998).

Abraham and KDA made a false representation as to the true value of the Collateral pledged to secure the Agreement. Abraham knew, on the basis of his expertise in the jewelry industry, that the representations made regarding the value of the Collateral were materially false. Abraham and KDA intended to induce Plaintiffs to enter into the Agreement by misrepresenting the value of the Collateral. Plaintiffs justifiably relied upon Abraham's misrepresentation when

they entered into the Agreement. Plaintiffs sustained $2,500,000 in damages as a result of Abraham and KDA's conduct.

Plaintiffs are entitled to judgment on these claims against Abraham and KDA. Due to the egregious nature of Abraham and KDA's conduct, Plaintiffs are entitled to recover punitive damages.

### G. Intentional Infliction of Emotional Distress

A claim of intentional infliction of emotional distress requires showing: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) the Plaintiffs having suffered severe or extreme emotional distress; and (3) actual or proximate causation. *Star v. Rabello*, 97 Nev. 124, 125, 62 P.2d 90, 92 (1981). Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community. *Mauke v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24 (1998).

Plaintiffs have not shown that, by intentionally misrepresenting the value of the Collateral and refusing to repay the Loan pursuant to the Agreement, the Defendants' conduct was outside all possible bounds of decency and was utterly intolerable. Plaintiffs are not entitled to judgment on this claim, but may proffer evidence and argument in support of it if they wish to pursue this claim.

### H. Deceptive Trade Practices in violation of NRS Chapter 598

Plaintiffs' Application for Default Judgment contends that Defendants violated Nevada Revised Statutes § 41.600 by engaging in consumer fraud. The definition of "consumer fraud" under that statute incorporates the definition of "deceptive trade practice" under § 598.0915(15), which states that a "person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she: knowingly makes any other false representation in a transaction."

However, Plaintiffs' Complaint does not allege a violation of § 41.600. Rather, it alleges only a violation of § 598.0915(15). Thus, the request in the Application improperly exceeds the

relief requested in the Complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *see also In re Ferrell*, 539 F.3d 1186, 1192 (9th Cir. 2008) (denying attorneys' fees requested under a statute that differed from the statute cited in the complaint; a "complaint's request for 'such other relief as the court deems appropriate' cannot save the . . . claim."). Therefore, Plaintiffs are not entitled to judgment on a claim alleging violation of § 41.600. However, they may proffer evidence and argument in support of a claim of violation of Chapter 598 if a private right of action exists under that chapter.

### I. Unjust Enrichment

Plaintiffs have asserted a claim for unjust enrichment. In Nevada, "[a]n action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997).

Plaintiffs allege that they entered into a contract with KDA, and I am entering default judgment in their favor on their claim that KDA breached that contract. Therefore, they cannot maintain a claim for unjust enrichment. Plaintiffs are not entitled to judgment on this claim.

### J. Alter Ego

Plaintiffs' Twelfth Cause of Action alleges alter ego liability and asserts that defendants KDA and Abraham are "one and the same." ECF No. 1 at 20. But the Complaint does not request any specific relief regarding this claim. *See Id.* at ¶¶ 171–179 and Prayer for Relief ¶¶ 1-5. Moreover, the Application for Default Judgment alleges that "the corporate Defendants listed in the Complaint which were not parties to the contract are influenced and governed by Abraham." ECF No. 27 at 14. Plaintiffs' Application also requests "relief and recovery through whichever business Abraham has attempted to hide his assets." *Id.* This request improperly exceeds the relief requested in the Complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *In re Ferrell*, 539 F.3d at 1192 (denying attorneys' fees requested under a statute that differed from the statute cited in the complaint).

Even if Plaintiffs are able to request alter ego liability, they have not offered sufficient proof of that claim. Plaintiffs offer a Declaration from a paralegal about uncorroborated statements made by a third-party defendant, unauthenticated business entity information from the Nevada Secretary of State's office, and a "cease and desist" letter from a lawyer who represented one of the Defendants. ECF Nos. 27-10, 27-11, and 27-12. This is woefully inadequate to support a finding of an alter ego relationship. Plaintiffs are not entitled to judgment on this claim, but may proffer evidence and argument in support of it if they wish to pursue this claim.

### III. CONCLUSION

Based on the foregoing, the Plaintiffs' Application for Default Judgment **(ECF No. 27) is GRANTED IN PART**. Plaintiffs are entitled to Default Judgment as follows:

Plaintiffs' claim against defendant KDA for Breach of Contract;

Plaintiffs' claim against defendants KDA and Abraham for Fraud in the Inducement;

Plaintiffs' claim against defendants KDA and Abraham for Fraudulent Misrepresentation.

IT IS FURTHER ORDERED that defendants KDA and Abraham are liable, jointly and severally, to Plaintiffs in the amount of $2,500,000 for compensatory damages.

IT IS FURTHER ORDERED that Plaintiffs may file a motion for punitive damages, attorneys' fees, and non-taxable costs if they have sufficient legal and factual bases.

IT IS FURTHER ORDERED that Plaintiffs may attempt to pursue an accounting of defendants KDA and Abraham's assets or other post-judgment discovery by filing the appropriate motion with the Magistrate Judge.

DATED this 5th day of July, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE